## Walton's Admr., et al. v. Rogers, et al.

(Decided May 7, 1920.)

## Appeal from Boone Circuit Court.

1. Descent and Distribution—Settlement— Partition— Estoppel.— Where all of the children of decedent are parties to an agreed settlement of the estate and the partition deed carrying this agreement into effect, as well as a later contract for the sale of a certain tract in controversy, these agreements being upon the basis of a mutual understanding that decedent was the owner in fee simple of this tract, those of the children surviving the widow of decedent, and by her will devised additional interests in the tract, will be estopped from claiming as against the heirs of the other children, larger interests in the land than agreed upon as a basis for the partition deed and contract of sale.

2. Specific Performance—Conditions Parties Had in Contemplation. —Two daughters of decedent having agreed to purchase the tract of land in controversy upon an agreed valuation of the whole and upon the basis of a mutual understanding that their father at his death owned the land in fee simple and that each of the children then owned an undivided one-eighth in remainder, the widow at that time owning a life estate in the whole; it being thereafter ascertained from their mother's will that she was the owner in fee of an interest in the land, specific performance of the contract of sale will be enforced upon its original terms only, and not as altered to suit facts and conditions that neither party had in contemplation.

SAMUEL W. ADAMS for appellants.

O. M. ROGERS and R. G. WILLIAMS for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing upon both the original and cross appeals.

John E. Walton died intestate April 20, 1898, a resident of Boone county, Kentucky, the owner of 1,040 acres of land in Missouri, 1,760 acres in Kansas and about 2,000 acres in Kenton and Boone counties, Kentucky, in addition to considerable personalty. He left a widow, Missouri Walton and nine children, all of whom were of legal age.

Soon after his death his widow and children agreed upon a division of his estate, but before this division was consummated the youngest son, Napoleon, who was unmarried, died intestate and without issue. It was agreed by all that deeds be made to the several parties in accordance with the original agreement, the land that was

to be conveyed to Napoleon to be conveyed to his mother, who was his sole heir.

Accordingly on March 8, 1900, all of the parties executed a single partition deed conveying to each his or her share of the real estate as agreed. By this deed there was conveyed to Mrs. Walton in fee the 380 acres of land allotted to Napoleon, and certain other lands as dower, including a tract of 264 acres in Boone county, Kentucky, which only is involved in this litigation.

The deed recites as the consideration for its execution and the conveyance of described lands, including the 264 acre tract, as dower to Mrs. Walton, the following:

"Whereas John E. Walton departed this life intestate, a resident and citizen of the county of Kenton and state of Kentucky on the 20th day of April, A. D. 1898, leaving surviving him Missouri Walton, his widow, Laura V. Rogers, George F. Walton, William Walton, John J. Walton, Thomas J. Walton, Napoleon B. Walton, Daisy W. Riggs, Margaret H. Riffe and Alice Zimmerman his children and only heirs at law.

"And whereas, said Walton died seized and possessed in fee simple of two thousand and thirteen (2,013) acres of real estate, more or less, situated in the counties of Boone and Kenton in the state of Kentucky and one thousand and forty (1,040) acres of real estate situated in the county of Gentry, state of Missouri, and one thousand seven hundred and sixty (1,760) acres of real estate situated in the county of Clark, state of Kansas.

"And whereas, said widow and children, heirs and legal representatives by mutual consent and agreement, caused to be laid off, allotted and assigned to said widow, Missouri Walton, to be held by her as her dower, the following described real estate, to-wit."

Mrs. Walton signed and acknowledged this instrument and therefore agreed that in consideration of the dower assigned to her that her husband "died seized and possessed in fee simple" of the lands thereby divided and conveyed and that the lands therein assigned to her as dower, including the 264 acre tract in controversy, were "to be held by her as dower."

All of the children signed and acknowledged the deed and, of course, made the same agreement with her and each other. There is not one word of oral testimony indicating that these solemn covenants were not thoroughly understood and knowingly made by Mrs. Walton and each of her children, but Mrs. Walton did claim during

the lifetime of her husband and thereafter that he had never paid her for interest in the 264 acre tract which she had inherited from her father, although she did not mention that fact or make any claim to any interest in the land at the time of the agreed settlement or when the partition deed was executed, or at any time subsequent thereto unless a provision of her will, which will appear later, can be so interpreted. Her husband had purchased the interests of Mrs. Walton's brothers and sisters in this 264 acre tract, for which they had made him a deed, paying each of them $2,000.00. Mrs. Walton never conveyed her one-fourth interest therein, but this fact was not known to any of her children until after her death.

In March, 1911, two of the daughters, Margaret Riffe and Daisy Riggs, undertook to purchase this 264 acre tract and after having agreed with their mother upon the amount they should pay her each year so long as she lived, for her dower interest therein, executed the following written contract with all of the children except one, who signed a separate contract, exactly similar except the price was fixed at $12,000.00 instead of $15,000.00:

"This agreement made this 1st day of March, 1911, between Margaret H. Riffe and Daisy Riggs, parties of the first part, and the undersigned who are the heirs of John E. Walton deceased, parties of the second part witnesseth, as follows, to-wit:

"The said parties of the second part agree to sell and convey to the parties of the first part, the farm known as the John E. Walton homestead, consisting of two hundred and sixty (260) acres, more or less, located on the waters of Dry creek, near Erlanger, Ky., for the sum of fifteen thousand dollars ($15,000.00), said money to be paid to said parties of the second part at the death of Missouri Walton, who is the surviving widow of said John E. Walton, deceased. The said Missouri Walton has a life estate in said tract of land, and said parties of the first part agree to pay such interest on the above named sum to said Missouri Walton, during her lifetime as may be satisfactory and agreed upon by said parties of the first part; and said life tenant. Said parties of the first part shall pay all future taxes and other expenses in maintaining said farm.

"Executed this 10th day of March, 1911."

Immediately thereafter Mrs. Riffe and Mrs. Riggs took possession of the 264 acre tract of land, partitioned same and each has had full possession and control of her respective portion claiming to be the owner thereof ever since.

In August, 1915, Mrs. Walton died leaving a will, which was duly probated. So much thereof as is pertinent here is as follows:

"Third: Two thousand dollars ($2,000.00) that I inherited from my father, William McGlasson is still invested in the old home farm, part of which was formerly owned by my father, and which lies in Boone and Kenton counties, Kentucky. I direct my executor above named to assemble said two thousand dollars and distribute it as follows, to-wit: He shall pay six hundred ($600.00) each to my daughters, Daisy Riggs, Margaret Riffe and Alice Zimmerman, and the remaining two hundred dollars ($200.00) to my granddaughter, Mable Aline Riggs.

"Fourth: I direct that my executor above named shall within two (2) years after my death, to the best advantage sell all the balance of my property of which I may die seized and possessed, of whatsoever kind or character and wheresoever found and shall convert into money, and of this money he shall make the following disposition: . . .

"Fifth: I direct my above named executor after carrying out my will as above set forth in letter and in spirit to divide the balance of my estate equally among my children who survive me."

On November 15, 1917, appellees, the heirs of four of the children of John E. and Missouri Walton, who died before their mother, filed this action against her three surviving children and the heirs of another who died after the death of her mother, seeking a sale and partition of the proceeds of the 264 acre tract of land, alleging that same was owned by and in the possession of John E. Walton at his death and inherited in equal shares by his eight children and the heirs of such as were dead; that they were joint owners, in possession, and that the land was indivisible.

The defendants, now appellants, filed answer, counterclaim and cross-petition, traversing the allegations of the petition and asserting possession and right of title to be in Mrs. Riggs and Mrs. Riffe's heirs under the contract of March, 1911, *supra,* of which they asked

specific performance by the master, as some of the heirs were infants; and offering to pay into court the agreed purchase price which they asked be distributed upon the following basis, alleged to be their interests therein as heirs of John E. Walton and devisees of Mrs. Missouri Walton, viz.: The one-ninth interest of Napoleon Walton, inherited by his mother and willed by her to them by the fifth clause of her will, to the defendants; the undivided one-fourth interest inherited by Mrs. Walton from her father to her devisees named in the fourth clause of her will to the extent of $2,000.00 and the remainder of this fourth to the devisees, her surviving children, named in the fifth clause of her will; and that the balance be divided equally among the eight heirs of John E. Walton and their descendants *per stirpes*.

The plaintiffs by reply pleaded that by the partition deed and by her conduct Mrs. Walton was estopped to claim any interest in the 264 acre tract and that by that deed and the contract of March, 1911, and their conduct, defendants were estopped from denying that each of the eight children of John E. Walton owned an undivided one-eight interest in the land, or from claiming for themselves a larger interest therein.

Upon a trial the chancellor denied the plea in estoppel, refused a specific performance of the contract of March, 1911, ordered the land sold and the proceeds divided as asked by the defendants except that he held Mrs. Walton as the heir of her father owned only a $2,000.00 interest instead of an undivided one-fourth therein.

The defendants have appealed from so much of the judgment as denied them specific performance of the contract of March, 1911, and ordered the sale of the land, and from so much thereof as held that Mrs. Walton, as heir of her father, had only a $2,000.00 instead of a one-fourth interest in the land. Plaintiffs have cross-appealed from that part of the judgment denying their pleas of estoppel.

As it is conceded that Mrs. Walton never conveyed to her husband the undivided one-fourth interest in the land that she inherited from her father and that she was the sole heir of her son, Napoleon who died subsequent to the death of his father, it is apparent that, unless estopped, she was the owner at her death of an undivided one-fourth interest in the land inherited from her father and an undivided one-ninth interest therein

inherited from her son Napoleon, and that by her will her devisees, unless estopped to claim same against the plaintiffs, acquired these interests in the land.

It is insisted for the defendants that the partition deed does not constitute an estoppel against Mrs. Walton because the plaintiffs were in nowise prejudiced thereby; that by allowing the 264 acre tract of land to be set apart to her as part of her dower, although she owned an undivided one-fourth interest in the fee, the rights only of Mrs. Walton to dower were prejudiced, since she thereby got less as dower than otherwise would have been the case, and her children received more as their interests in their father's estate than they would have received had she asserted her real interest in this tract of land. That she therefore received nothing and did nothing, and none of her children surrendered anything to her that could possibly work an estoppel against her subsequent assertion of her absolute title to a portion of the land that she had mistakenly, or even purposely, accepted as dower.

Plaintiffs insist that she is bound by the recitals in the deed upon consideration of which the division was made, viz.: that her husband was the owner in fee simple of this tract of land and that same was set apart to and accepted by her as dower; that in addition to the land set apart to her as dower and conveyed to her as heir of her son, Napoleon, she received in addition to her one-half of certain bank stocks worth about $3,000.00, the interests of the heirs as well, and that it cannot now be determined whether or not the heirs were prejudiced by the division made by agreement between them and their mother, upon the basis and representation by her that her husband owned the fee in this tract of land; that she never claimed to own any interest in the fee in the land, but claimed only that she had $2,000.00 invested therein and that she consented and was a party (although she did not sign the written contract) to the purchase by her daughters, Mrs. Riffe and Mrs. Riggs, of the other children's undivided interest therein, knowing full well that all parties to the contract understood and believed that she owned only a dower interest therein.

Since it cannot now be determined whether or not Mrs. Walton benefited or was prejudiced by the agreed division and partition deed it is at least possible that it would have been so extremely inequitable after so long a time to permit her, had she attempted to do so in her

lifetime, to deny that her husband owned the fee in this tract of land, or that she had other than a dower interest therein, and to claim otherwise as against her children, that she would have been estopped from so doing, but we shall not attempt to decide that question because it is not necessary in this case. Whatever might have been the result to her she is not a party to this action and those now claiming under the will were themselves parties to the agreed settlement of the estate of John E. Walton and the partition deed whereby that agreement was carried into effect, as well as to the contract of March, 1911, and they by their own acts are, we think, clearly estopped from claiming, as against the plaintiffs, larger interests in the land than that agreed with the plaintiffs they owned therein as a basis for both the partition deed of March 8, 1900, and the contract sale of March, 1911. In consideration of the agreement that all of this land was owned in fee by their father, John E. Walton. plaintiffs conveyed to the defendants and defendants conveyed to the plaintiffs certain tracts of land that it is scarcely possible would have been allotted or conveyed to them had they known the real facts with reference to the title to this 264 acre tract. No one can possibly tell how the lands would have been divided had they been divided upon another basis than that agreed to by all the parties. That partition has been acquiesced in by all parties for nearly twenty years, and now only a small part of that agreement not the whole of it, is sought to be revised for the benefit of some of the parties thereto while holding on to what they got under the agreement. It is admitted by all parties that none of them except the mother knew that the father did not have absolute title to the whole of this tract of land when the partion deed was executed or when the contract of March, 1911, was entered into. In both transactions the minds of the parties met and they contracted upon the basis that each of the children owned an undivided one-eighth in remainder in this tract of land, and it would be extremely inequitable to enforce against the plaintiffs the contract of March, 1911, as defendants seek to have done, not upon the basis and understanding upon which that contract was entered into, but altered to suit facts and conditions that neither party then had in contemplation. The minds of the parties did actually meet in a common understanding in that contract and as understood by them then, we think, it is binding upon all of the parties. The contract

itself is ambiguous in several respects, but the understanding that all parties then had of its meaning is not even disputed by anyone. All parties then understood, believed, and in effect represented to each other, that each child owned an undivided one-eighth interest in remainder in the tract of land and upon this basis the two daughters agreed to purchase the undivided interests of the other children upon a valuation of $15,000.00 except as to George's interest, which was to be paid for upon a basis of $12,000.00. The contract itself states that the six children other than Mrs. Riffe and Mrs. Riggs, were the parties of the second part, and that all of the purchase money was to be paid said parties of second part, but all agree that this was not their agreement, but that it was their agreement that these two daughters were to purchase the interests of the other children upon the price agreed upon as the valuation of the whole. It would therefore be unfair to the parties of the second part to carry out this contract upon other conditions than all parties understood it to mean when made. It likewise would be unfair, and very difficult if not impossible of equitable adjustment, to oust Mrs. Riffe and Mrs. Riggs from this tract which they have partitioned and improved, with the consent of the other heirs, as their own, subject only to a liability for the agreed purchase price. The fair way out for all is for all to abide their contract as they understood it, and upon the basis of ownership that they agreed was true as the basis of their several agreements.

We are therefore of the opinion that the lower court erred not only in denying the plea of estoppel asserted by the plaintiffs against the defendants, but also in refusing to decree a specific performance of the contract of March, 1911, and in failing to adjudge that the proceeds of that sale should be paid by the defendants, Mrs. Riffe and Mrs. Riggs, one-eighth of $12,000.00 to the heirs of George Walton, and one-eighth of $15,000.00 to each of the other five children and their heirs *per stirpes*.

In lieu of rents, Mrs. Riffe and Mrs. Riggs should be charged with interest on the purchase money from the date when under the contract it was due, that is, from the death of Mrs. Walton.

Wherefore the judgment is reversed upon both the original and cross appeals. with directions to enter a judgment in conformity herewith.